| | | | |
|---|---|---|---|
| Case No. | LA CV19-00806 JAK (PLAx) | Date | May 22, 2019 |
| Title | Chloe Akana v. Estee Lauder Inc., et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE PLAINTIFF'S MOTION TO REMAND (DKT. 11)**
**JS-6: Remand**

## I. Introduction

On December 27, 2018, Chloe Akana ("Plaintiff" or "Akana") brought this putative class action in the Los Angeles Superior Court against Estée Lauder, Inc., ELC Beauty LLC (collectively, "Defendants") and Does 1-50. Compl., Dkt. 1-1 at 5-27. The Complaint advances seven causes of action, each of which arises under the California Labor Code: (i) failure to provide meal periods; (ii) failure to provide rest periods; (iii) failure to pay hourly and overtime wages; (iv) failure to indemnify; (v) failure to provide accurate written wage statements; (vi) failure to timely pay all final wages; and (vii) unfair competition. *Id.* Defendants filed an answer on January 31, 2019. Dkt. 1-1 at 50-55.

On February 1, 2019, Defendants removed this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Notice of Removal, Dkt. 1. On March 4, 2019, Plaintiff filed a motion to remand the action to the Superior Court ("Motion"). Dkt. 11. Defendants filed an opposition, and Plaintiff filed a reply. Dkts. 14, 15. It was determined that the Motion was appropriate for resolution without oral argument pursuant to Local Rule 7-15, and the matter was taken under submission. Dkt. 24.

For the reasons stated in this Order, the Motion is **GRANTED**.[1]

## II. Factual Background

Plaintiff is a former non-exempt, hourly employee of Defendants. Compl. ¶ 20. She brought this action on behalf of several putative classes and subclasses of employees, with respect to the time period "beginning four years prior to the filing of this action until judgment is entered" (the "Relevant Time

---

[1] Defendants contend that "[t]he Court should decline to consider Plaintiff's Motion" because the pre-filing conference of counsel required under the Local Rules took place four days, rather than seven days, prior to the filing of the Motion. Dkt. 14 at 2. The authority to decline to consider a motion for failure to comply with the Local Rules is discretionary, not mandatory. *See* L.R. 7-4 (discussing circumstances under which "[t]he Court may decline to consider a motion"). There is not good cause to decline to consider the Motion on the merits, particularly in light of Defendants' failure to demonstrate prejudice and the jurisdictional issues presented.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-00806 JAK (PLAx) | Date | May 22, 2019 |
| Title | Chloe Akana v. Estee Lauder Inc., et al. | | |

Period"). *Id.* ¶ 12. Those classes and subclasses are defined as follows:

> **Hourly Employee Class**: All persons employed by Defendants and/or any staffing agencies and/or any other third parties who sold cosmetics at a retail store (including but not limited to Est[é]e Lauder stores and/or other department stores) in hourly or non-exempt positions in California during the Relevant Time Period.
>
>> **Meal Period Sub-Class**: All Hourly Employee Class members who worked in a shift in excess of five hours during the Relevant Time Period.
>>
>> **Rest Period Sub-Class**: All Hourly Employee Class members who worked a shift of at least three and one-half (3.5) hours during the Relevant Time Period.
>>
>> **Wage Statement Penalties Sub-Class**: All Hourly Employee Class members employed by Defendants in California during the period beginning one year before the filing of this action and ending when final judgment is entered.
>>
>> **Waiting Time Penalties Sub-Class**: All Hourly Employee Class members who separated from their employment with Defendants during the period beginning three years before the filing of this action and ending when final judgment is entered.
>
> **UCL Class**: All Hourly Employee Class members employed by Defendants in California during the Relevant Time Period.
>
> **Expense Reimbursement Class**: All persons employed by Defendants in California who incurred business expenses during the Relevant Time Period.

*Id.*

The Complaint alleges that Plaintiff and members of the putative class regularly performed "off-the-clock" work. *Id.* ¶¶ 21-22. It alleges that Plaintiff and the putative class members regularly worked off-the-clock during their meal periods because no one was available to relieve them of their duties, yet they would face discipline if they did not clock out and do so. *Id.* ¶ 23. It alleges that they also worked off-the-clock after their shifts ended, because "they were unable to complete all of their duties in the time allotted as they were usually short staff." *Id.* ¶ 24. It further alleges that Defendants should have paid Plaintiff and the putative class members for this off-the-clock work, but failed to do so. *Id.* ¶ 25.

The Complaint next alleges that Plaintiff and members of the putative class were not provided with meal periods of at least 30 minutes for each five-hour work period or rest periods of at least ten minutes for each four-hour work period, as required under the California Labor Code. ¶¶ 28, 30, 61-71. It alleges that Defendants "chronically understaff[ed] each work shift"; "impos[ed] so much work on each employee such that it made it unlikely that an employee would be able to take their breaks if they wanted to finish their work on time"; had a "policy of not scheduling each [meal or rest] period as part of each work shift"; and lacked any "formal written meal and rest period policy that encouraged employees to take their meal and rest periods." *Id.* ¶ 28.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-00806 JAK (PLAx) | Date | May 22, 2019 |
|---|---|---|---|
| Title | Chloe Akana v. Estee Lauder Inc., et al. | | |

The Complaint also alleges that Plaintiff and members of the putative class worked seven consecutive days "on many occasions" but were not compensated with a premium for the work performed on the final day. *Id.* ¶¶ 33-34. It further alleges that Defendants miscalculated the regular rate of pay for Plaintiff and members of the putative class, and therefore "fail[ed] to pay them overtime wages for all overtime hours worked." *Id.* ¶¶ 35-36. It also alleges that Defendants required Plaintiff and members of the putative class to use their personal cell phones and vehicles to perform their job duties, but Plaintiff and members of the putative class were not reimbursed for the associated business expenses. *Id.* ¶¶ 37-40. Finally, it is alleged that Defendants did not provide Plaintiff and members of the putative class with accurate wage statements, and that Defendants failed to make timely payment of all earned wages upon separation of employment. *Id.* ¶¶ 41-45, 105-111.

### III. Analysis

#### A. Legal Standards

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015). "In determining the amount in controversy, courts first look to the complaint. Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Id.* at 1197 (internal quotations omitted). "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Id*.

A defendant is only required to file a notice of removal that includes "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014). However, if a plaintiff contests these allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id*. The preponderance of the evidence standard requires that "the defendant must provide evidence establishing that it is more likely than not that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co*., 102 F.3d 398, 404 (9th Cir. 1996) (internal quotation marks omitted). The parties may submit evidence, including affidavits or declarations, or other "'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co*., 116 F.3d 373, 377 (9th Cir. 1997)). "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.*

"CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* at 1198. "As with other important areas of our law, evidence may be direct or circumstantial. In either event, a damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Id*. at 1199. "Under the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-00806 JAK (PLAx) | Date | May 22, 2019 |
|---|---|---|---|
| Title | Chloe Akana v. Estee Lauder Inc., et al. | | |

Under certain circumstances, attorney's fees may also be included in the amount in controversy. "[I]f the law entitles the plaintiff to future attorneys' fees if the action succeeds, then there is no question that future attorneys' fees are at stake in the litigation, and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy." *Fritsch v. Swift Transp. Co. of Ariz.*, 899 F.3d 785, 794 (9th Cir. 2018) (internal quotation marks, citation and brackets omitted). However, "a court's calculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place." *Id.* at 796. For example,

> [a] state may adopt the lodestar method for determining reasonable attorneys' fees under certain statutes, *see Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001), or (as in this case) not allow recovery of attorneys' fees for legal work on certain types of claims, *see Kirby v. Immoos Fire Prot., Inc.*, 53 Cal. 4th 1244, 1255 (2012) (stating that the attorneys' fees shifting provisions in California Labor Code §§ 218.5 and 1194 do not apply to legal work relating to meal and rest period claims). The court's determination regarding the amount of attorneys' fees at stake must take into account these statutory and contractual restrictions.

*Id.* Moreover, as with its assessment of potential damages, "the defendant must prove the amount of attorneys' fees at stake by a preponderance of the evidence" *Id.*

### B. Application

#### 1. Whether the Class Size and Minimal Diversity Requirements Have Been Satisfied

It is not disputed that the putative class exceeds 100 persons, and that there is minimal diversity between the parties. It is alleged that Plaintiff is a citizen of California. Compl. ¶ 5; Notice of Removal, Dkt. 1 ¶ 19. It is alleged that Defendants are citizens of Delaware and New York. Compl. ¶¶ 6-7; Notice of Removal, Dkt. 1 ¶¶ 21-22; First Declaration of Mark Angeles ("First Angeles Decl."), Dkt. 1-2 ¶ 3; Second Declaration of Mark Angeles ("Second Angeles Decl."), Dkt. 1-3 ¶¶ 3-4. Therefore, the minimal diversity requirement of CAFA is satisfied.

The Notice of Removal states that "[t]here are more than 100 members that fall within the definition of Plaintiff's putative class." Dkt. 1 ¶ 25. In addition, Mark Angeles, the Director of Human Resources for The Estée Lauder Companies Inc., declares that "[a]s of January 2019, when ELC Beauty LLC last ran its putative class data, there were at least 7,713 persons that fit th[e] definition of the class." Second Angeles Decl., Dkt. 1-3 ¶ 5. Accordingly, the class size requirement of CAFA also is satisfied.

#### 2. Whether the Amount in Controversy Element Has Been Satisfied

The parties dispute whether the amount in controversy requirement of CAFA has been satisfied. Plaintiff argues that Defendants have not met their burden to demonstrate that more than $5 million is at stake in this action. Defendants disagree. According to Defendants, a "conservative[] estimate[]" of the amount in controversy is approximately $70 million. Dkt. 14 at 4.

As noted, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 135 S. Ct. at 554. However, "'[e]vidence

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-00806 JAK (PLAx) | Date | May 22, 2019 |
|---|---|---|---|
| Title | Chloe Akana v. Estee Lauder Inc., et al. | | |

establishing the amount is required' where, as here, defendant's assertion of the amount in controversy is contested by plaintiffs." *Ibarra*, 775 F.3d at 1197 (quoting *Dart*, 135 S. Ct. at 554). A court then evaluates whether the defendant has shown, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold. *Id.*

Defendants submitted the declaration of Mark Angeles in support of the amount in controversy issue presented in the Notice of Removal. Second Angeles Decl., Dkt. 1-3. It includes some foundation for the representations by Defendants in the Notice of Removal. Angeles declares, in relevant part:[2]

> 1. I am employed by The Estée Lauder Companies Inc. as its Director of Human Resources, North America Field and Retail. I have held this position since approximately July 2018 and am familiar with ELC Beauty LLC's business operations. In my capacity as Director of Human Resources, North America Field and Retail, I have access to information and data regarding ELC Beauty LLC's operations in California.
>
> 2. The matters set forth in this declaration are based on my own personal knowledge and, if called upon as a witness, I could and would testify competently thereto. To the extent this declaration is based upon business records, those records are kept in the regular course of business, entries are made in those records in a timely manner by people with knowledge of the information being entered, and it is the regular practice of ELC Beauty LLC to maintain such records.
>
> . . .
>
> 5. With respect to the first, second, fifth and sixth causes of action, the Complaint defines the putative class as "all persons employed by Defendants and/or staffing agencies and/or any other third parties who sold cosmetics at a retail store (including but not limited to The Estée Lauder Companies stores and/or third-party department stores) in hourly or non-exempt positions in California during the Relevant Time Period." "The relevant time period is defined as the time period beginning four years prior to the filing of this action until judgment is decreed," which is December 27, 2014 to the present. As of January 2019, when ELC Beauty LLC last ran its putative class data, there were at least 7,713 persons that fit this definition of the class. Of the 7,713 putative class members 4,693 are former employees.
>
> 6. Plaintiff Chloe Akana's final regular hourly rate of pay was $24.97 per hour.

*Id.* Defendants presented no new evidence in support of their opposition to the Motion. Accordingly, Defendants have provided some evidentiary support for only three factual matters: (i) the Hourly Employee Class[3] consists of at least 7713 putative class members; (ii) 4693 of those putative class

---

[2] The declaration consists of six paragraphs. The two omitted paragraphs only concern the citizenship of ELC Beauty LLC.
[3] The definition cited by Mark Angeles in his declaration is that for the Hourly Employee Class. *See* Compl. ¶ 12. The Hourly Employee Class is defined more broadly than the other sub-classes.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-00806 JAK (PLAx) | Date | May 22, 2019 |
|---|---|---|---|
| Title | Chloe Akana v. Estee Lauder Inc., et al. | | |

members are former employees;[4] and (iii) Akana's final regular hourly rate of pay was $24.97.

In the Notice of Removal, Defendants also represent that, "[f]rom December 27, 2014 to January 31, 2019, there are 818,704 workweeks." Dkt. 1 ¶ 13(a). However, Defendants do not explain how this figure was calculated. There is no express calculation based on the few figures provided in the Second Angeles Declaration to explain the claimed 818,704 workweeks during the period stated. During the stated time period of approximately 49 months, there were approximately 214 weeks. Presumably, Defendants multiplied this number by some figure as to the number of members of the putative class who would have worked, to generate the 818,704 figure. However, no explanation of such a calculation, or how its elements were derived, has been provided. Moreover, the workweeks figure stated by Defendants is the basis for each of their other material calculations.

There are other substantive defects in Defendants' calculations. For example, the limited information in the Second Angeles Declaration supports the proposition that there was a substantial variation in the composition of the putative class during this time period. As to each of the 7713 employees who worked for Defendants for some period between December 27, 2014 and January 2019, and who would be within the putative class as defined, 4693 are no longer employed by Defendants. This raises questions as to the propriety of using the 7713 figure to compute potential liability for violations at any given time as well as throughout the Relevant Time Period. Nor have Defendants explained either how they made their calculations or why it might be appropriate to use the 7713 figure to compute the monetary amount of potential claims for violations during the entire time period. The evidence also can be interpreted to show that, assuming Defendants' staffing needs remained largely consistent over the Relevant Time Period, at any given time, they apparently employed approximately 3000 people who fit the Hourly Employee Class criteria, i.e., (7713 – 4693 = 3020).

Defendants also do not discuss the length of the shifts worked by the putative class members, or how many days each employee worked during any particular workweek. For example, the meal period claims apply only to shifts in excess of five hours, and the rest period claims apply only to shifts in excess of 3.5 hours. It is unclear whether any employees are part-time, or whether they took vacation periods during which they would not have been subjected to meal and rest period violations. No information is provided about any of these issues.

There is also no foundation provided for the hourly rate used to calculate potential liability. The Second Angeles Declaration presents only one fact as to this issue -- Akana's final regular hourly rate of pay was $24.97. The Notice of Removal also states that the applicable minimum hourly wage in effect in December 2014 was $9.00. Dkt. 1 ¶ 13. Defendants' principal calculations are premised on the $24.97 figure, although they provide alternative calculations using the $9.00 figure for certain causes of action. However, Defendants provide no basis on which to use Akana's final hourly rate of pay to calculate the wage for the rest of the putative class members at relevant time periods. Similarly, Defendants have

---

[4] However, all former employees who are members of the Hourly Employee Class are not necessarily members of the Waiting Time Penalties Sub-Class. That sub-class is defined as "[a]ll Hourly Employee Class members who separated from their employment with Defendants during the period beginning three years before the filing of this action and ending when final judgment is entered." Comp. ¶ 12. This definition excludes members of the Hourly Employee Class who are former employees, but who separated from their employment more than three years, but less than four years, before this action was filed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-00806 JAK (PLAx) | Date | May 22, 2019 |
| Title | Chloe Akana v. Estee Lauder Inc., et al. | | |

provided no evidence as to Akana's initial rate of pay, her level of experience compared with that of other putative class members, or any variation in the hourly rates for different positions held by members of the putative class. This omission is significant given the breadth of the class definition. Using Akana's final hourly rate of pay may not be appropriate to determine her own potential damages for violations throughout the Relevant Time Period if her rate of pay changed during the several years that she was employed.

Each of these shortcomings is tied to a predicate fact necessary to calculate potential liability. And the omitted data should be within the control of Defendants, who control the relevant payroll records. It is also noteworthy that the defendants in *Ibarra* provided materially more information on each of these issues. The Ninth Circuit reviewed it before presenting its analysis of the parties' dispute as to a violation rate. There, the defendant provided

> a declaration of its senior director of employee services and administration, which had a table listing all of its non-exempt employees and their corresponding number of shifts worked in excess of 5 hours and 3.5 hours during the relevant class period. Per this table, [the defendant] employed about 1,900 non-exempt employees in California from January 1, 2008, to December 31, 2012, and these employees worked 476,865 shifts of more than 5 hours and 553,027 shifts of more than 3.5 hours during this period. The average hourly wage of these employees was $11.66.

775 F.3d at 1198.

Given the aforementioned shortcomings, Defendants have not demonstrated by a preponderance of the evidence that the amount in controversy exceeds $5 million.

Even if Defendants' calculations as to staffing and hourly rates were sufficient, they would still fail to meet their burden of proof as to the estimated violation rates. Defendants apply an estimated violation rate of one noncompliant meal break and one noncompliant rest break per week per employee. Dkt. 1 ¶ 13(b)-(c).[5] As to the waiting time penalty claims, Defendants assume that each former employee can recover the maximum statutory penalty, *i.e.*, a penalty for 30 days of improperly withheld wages. *Id.* ¶ 13(d). Defendants argue that they "have no choice but to engage in some level of estimation, because Plaintiff's Complaint provides no guidance." Dkt 14 at 5. However, they provide no factual basis at all for their estimated violation rates. Although such support was unnecessary in the Notice of Removal, some factual basis is required once the amount in controversy has been contested. As in *Ibarra*, Defendants "relied on an assumption about the rate of its alleged labor law violations that was not grounded in real evidence," despite having the burden of proof as to the amount in controversy. 775 F.3d at 1198. Defendants had the opportunity to present evidence but did not do so.

Defendants contend that the language in the Complaint supports an assumed high violation rate, because it is alleged that "Defendants had a 'policy or practice of not providing' meal and rest periods." Dkt. 14 at 7. Defendants emphasize allegations of "chronic[] understaff[ing]" and a workload that "made it unlikely that an employee would be able to take their breaks if they wanted to finish their work on time" *Id.*;

---

[5] Plaintiff erroneously refers to this as a 100% violation rate. However, as Defendants point out, a 100% violation rate would arise from daily, not weekly, violations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-00806 JAK (PLAx) | Date | May 22, 2019 |
|---|---|---|---|
| Title | Chloe Akana v. Estee Lauder Inc., et al. | | |

Compl. ¶¶ 28, 30. Defendants argue that "[t]he use of the terms 'chronic' and 'unlikely' convey that Plaintiff alleges that Defendants' conduct was ongoing with regularity and resulted in a more-often-than-not missing of meal period." Dkt. 14 at 8. However, the allegations in *Ibarra* also concerned those as to a "pattern and practice," as well as others that the defendant "maintain[ed] an institutionalized unwritten policy that mandates these unlawful practices." 775 F.3d at 1198. Nevertheless, *Ibarra* held that, to support a claim as to the amount in controversy, the defendant must present evidence, not bare assumptions, as to the violation rate.

Also unpersuasive is Defendants' discussion of attorney's fees. Just as a defendant must present evidence as to potential damages, "the defendant must prove the amount of attorneys' fees at stake by a preponderance of the evidence." *Fritsch*, 899 F.3d at 796. Attorney's fees may be included in the amount in controversy where applicable. However, their amount "is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place." *Id*. For example, attorney's fees may not be recovered for legal work performed in connection with meal and rest period claims in California, *id.*, and those are the claims that appear to provide the largest component of Defendants' potential liability. However, Defendants did not address these limitations. Similarly, Defendants provided no evidence to support their assumptions as to the amount of attorney's fees at issue. Instead, they make the conclusory assertion that "[a] reasonable estimate of Plaintiff's potential attorneys' fees in this matter would be 25% of the total recovery." Dkt. 14 at 9.

For the foregoing reasons, Defendants have failed to meet their burden to show, by a preponderance of the evidence, that the amount in controversy exceeds $5 million as required for removal pursuant to CAFA.[6]

## IV. Conclusion

For the reasons stated in this Order, the Motion is **GRANTED**. This action is remanded to the Los

---

[6] Plaintiff did not present competing evidence as to whether the amount in controversy is less than $5 million. However, "district courts in the Ninth Circuit have found that a plaintiff need not come forward with evidence that a case is not removable until a removing defendant has met its burden." *Jian-Ming Zhao v. RelayRides, Inc.*, No. 17-CV-04099-JCS, 2017 WL 6336082, at *10 (N.D. Cal. Dec. 12, 2017); *see, e.g.*, *Garcia v. Wal-Mart Stores Inc.*, 207 F. Supp. 3d 1114, 1119-20 (C.D. Cal. 2016) ("the court is not aware of any authority—nor has defendant cited to any—stating that a plaintiff must submit evidence challenging the amount in controversy"); *Blevins v. Republic Refrigeration, Inc.*, No. CV1504019MMMMRWX, 2015 WL 12516693, at *5 (C.D. Cal. Sept. 25, 2015) ("A number of district courts considering the question have held . . . that a plaintiff need only 'come forward with contrary evidence when the removing defendant has produced evidence to meet its initial burden.' . . . The court agrees that the burden of adducing evidence rests with defendant and that plaintiff need not proffer evidence until defendant has proffered sufficient proof to meet its initial burden.") (citation omitted); *Buehler v. Saddle Creek Corp.*, No. CV 15-01361 SJO-KK, 2015 WL 5618871, at *2 (C.D. Cal. Sept. 23, 2015) (*Ibarra* and *Dart Cherokee* "do[] not require a plaintiff to submit proof in order to prevail on a motion to remand when a defendant has not met its initial burden"); *Townsend v. Brinderson Corp.*, No. CV 14-5320 FMO RZX, 2015 WL 3970172, at *3 (C.D. Cal. June 30, 2015) ("[N]either *Dart Cherokee* nor *Ibarra* mandate that a plaintiff must always submit evidence challenging the amount in controversy. . . . The court reads those decisions as requiring a plaintiff to come forward with contrary evidence only when the removing defendant has first come forward with sufficient evidence to meet its initial burden."). These positions are persuasive. Remand is appropriate where a defendant has not met its burden to show the amount in controversy exceeds $5 million, independent of any competing evidence from the plaintiff.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-00806 JAK (PLAx) | Date | May 22, 2019 |
|---|---|---|---|
| Title | Chloe Akana v. Estee Lauder Inc., et al. | | |

Angeles Superior Court at its Spring Street Courthouse, Case No. 18STCV09741.

**IT IS SO ORDERED.**

|  | : |  |
|---|---|---|
| Initials of Preparer | ak | |